UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**FILED**

JAMES J. VILT JR,
CLERK

7/13/2026

U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

HENRY BACHMANN,                                )
COURTNEY BACHMANN, and                         )
MATTHEW LEMME,                                 )
                                               )
Plaintiffs,                                    )
                                               )
v.                                             ) Civil Action No.    3:26-cv-536-CRS
                                               )
CHRIS LANE,                                    )
in his official and individual capacity        )
as Elected Prosecutor of Floyd County;         )
                                               )
ELIZABETH STIGDON,                             )
in her official and individual capacity        )
as Chief Deputy Prosecutor of Floyd County;    )
                                               )
DELMAS PHILPOT,                                )
in his individual capacity as                  )
Floyd County Deputy Prosecutor;                )
                                               )
JORGE DIAZ GUMA,                               )
in his individual capacity as                  )
Floyd County Deputy Prosecutor;                )
                                               )
DETECTIVE L. MARTIN WIMP,                      )
in his individual capacity as an               )
Indiana State Police Officer;                  )
                                               )
DETECTIVE SCOTT CLAXON,                        )
in his individual capacity as                  )
Louisville Metro Police Officer                )
                                               )
OFFICER CHARLES MATHIESON,                     )
in his individual capacity as                  )
Louisville Metro Police Officer                )
                                               )
OFFICER ROBERT DOOLIN,                         )
in his individual capacity as                  )
Louisville Metro Police Officer                )
                                               )

1

OFFICER KODY DESPAIN                )
in his individual capacity as        )
Louisville Metro Police Officer      )
                                     )
UNKNOWN OFFICERS OF THE              )
LOUISVILLE METRO POLICE DEPARTMENT,  )
in their official and individual capacities; )
                                     )
MATTHEW EDGELL,                      )
in his individual capacity and officially )
as a New Albany, Indiana Police Officer )
                                     )
THE CITY OF NEW ALBANY, INDIANA,     )
(NEW ALBANY POLICE DEPARTMENT)       )
                                     )
FLOYD COUNTY BOARD OF                )
OF COMMISSIONERS                     )
                                     )
THE LOUISVILLE METRO GOVERNMENT,     )
                                     )
Defendants.                          )

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Henry Bachmann, Courtney Bachmann, by counsel and Matthew Lemme, pro se, respectfully state their Complaint against the above-named Defendants, alleging as follows:

**NATURE OF THE ACTION**

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, § 1988, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, alongside applicable state law tort claims.

2. This action arises out of a bad-faith, and extrajudicial cross-border conspiracy orchestrated by Indiana prosecutors and law enforcement officers who crossed state lines into the Commonwealth of Kentucky without jurisdiction, license, or legal

2

authority to execute a raid, seize substantial assets, and subsequently engage in a campaign of vindictive prosecution, evidence fabrication, and explicit felony intimidation targeting both the criminal defendants and their defense counsel.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over the federal constitutional claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4. This Court possesses supplemental jurisdiction over the state-law tort claims pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy and arise from a common nucleus of operative facts.

5. Venue is proper in the United States District Court for the Western District of Kentucky, Louisville Division, pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, specifically the execution of an extrajudicial search warrant and unlawful seizure of property at a real property situated on Main Street in Louisville, Kentucky.

## PLAINTIFF'S STATEMENT REGARDING OFFICIAL CAPACITY CLAIMS

6. Plaintiffs bring this action against various public officials in both their individual and official capacities. As a matter of law, a lawsuit against a public officer in their official capacity is a suit against the official's office and, by extension, the real party in interest—the governmental entity of which the officer is an agent.

7. **Claims Against State Officers**: Under the Constitution and laws of the State of Indiana, the Indiana State Police, the elected Prosecuting Attorney, and the Chief Deputy Prosecuting Attorney are recognized as officers of the State of Indiana. Accordingly, any

claims asserted against these Defendants in their official capacities as claims directly against the State of Indiana would be barred.

8. **Alternative County Agency**: To the extent that discovery reveals the elected Prosecuting Attorney, Chief Deputy Prosecuting Attorney, or their staff were operating outside of their state-mandated judicial functions and were instead acting as employees, agents, or representatives of Floyd County, Plaintiffs assert these official-capacity claims against Floyd County, Indiana, to ensure all potentially liable municipal or state entities are properly before the Court. Claims against State Police in their official capacity are likewise barred as claims against the State of Indiana. Official Capacity claims may be included if it is discovered that these officers were otherwise employed or acting as agents of the City of New Albany, Floyd County, Indiana, or Louisville Metro Government.

9. Claims Against Local/Municipal Officers: All claims asserted against officers of the Louisville Metro Police Department in their official capacities constitute claims directly against the Louisville Metro Government.

## PARTIES

10. Plaintiff Henry Bachmann is a citizen and resident of the State of Indiana, and the owner of the physical currency unlawfully seized by Defendants.

11. Plaintiff Courtney Bachmann is a citizen and resident of the State of Indiana, the spouse of Henry Bachmann, and a non-party in the case State of Indiana v. Henry Bachmann, who was subjected to a retaliatory, bad-faith arrest and fabrication of evidence under color of law. She was deprived of property and due process.

4

12. Plaintiff Matthew Lemme is an attorney licensed to practice law in Kentucky and Indiana, maintaining his residence and primary office in Indiana, who at all times relevant served as zealous criminal defense counsel for Henry Bachmann and counsel for Henry Bachmann in a state court civil action in Kentucky, and was targeted personally by the Prosecutor Defendants with extortionate felony threats.

13. Defendant Chris Lane is the Elected Prosecutor of Floyd County, Indiana, and is sued in his official and individual capacity as a final policymaker for the office.

14. Defendant Elizabeth Stigdon is the Chief Deputy Prosecutor of Floyd County, Indiana, and is sued in her official and individual capacity.

15. Defendant Delmas Philpot is a Deputy Prosecutor of Floyd County, Indiana, and is sued in his individual capacity.

16. Defendant Jorge Diaz Guma is a Deputy Prosecutor of Floyd County, Indiana, and is sued in his individual capacity.

17. Defendant Detective L. Martin Wimp is a law enforcement officer employed by the Indiana State Police and is sued in his individual capacity.

18. Defendants Officers Scott Claxon, Charles Mathieson, Robert Doolin, and Kody DeSpain of the Louisville Metro Police Department are law enforcement officers employed by the LMPD who assisted in the extrajudicial raid, and are sued in their individual and official capacities.

19. Defendant Unknown Officers of Louisville Metro Police Department are those supervising officers which reviewed and permitted the execution of a search and seizure at 2420 Main Street in Louisville, Kentucky and sued in their official and

5

individual capacity.  The unknown officers include those that made entry to the subject property in Louisville.

20. Defendant Matthew Edgell is an officer of the New Albany, Indiana Police Department and is sued in his official and individual capacity.

21. The City of New Albany, Indiana is a party as the official capacity of Matthew Edgell and provide negligent supervision and training.

22. The Floyd County Board of Commissioners transact the business of Floyd County, Indiana and is the properly named party for suit against Floyd County, Indiana. I.C. 36-2-2-2

23. Defendant Floyd County, Indiana, is a political subdivision organized under the laws of Indiana, responsible for the funding, administration, and oversight of municipal resources utilized in the underlying misconduct.

24. Defendant Louisville Metro Government is a consolidated municipal government organized under the laws of the Commonwealth of Kentucky, responsible for the policies, customs, and training protocols of the LMPD.

25. Defendant City of New Albany is organized under the laws of the State of Indiana and is responsible for the customs, policies, and training protocols of the New Albany Police Department.

## STATEMENT OF FACTS

### I.    Pretextual Sweeps and the Execution of the Initial Indiana Warrants

26. In September 2025, the Floyd County Prosecutor's Office and the Indiana State Police initiated a series of property sweeps targeting Henry Bachmann and a motorcycle club clubhouse.

27. To secure these initial search warrants from Floyd County Judge Carrie Stiller, Defendants drafted and presented probable cause affidavits heavily relying on "drug-nexus" language and boilerplate drug-trafficking jargon.

28. The state's actual, underlying investigative file contained zero evidence or explicit allegations connecting Henry Bachmann, Courtney Bachmann, or the clubhouse to drug offenses. Instead, the underlying criminal investigation centered entirely on an unbacked allegation of conspiracy to commit murder.

29. Using these pretextual, drug-labeled warrants, law enforcement officers forcibly swept multiple properties and seized substantial sums of United States currency belonging to Henry Bachmann.

## II.    The Extrajudicial Cross-Border Raid and Simulated Legal Process

30. Seeking to expand their financial seizure, the Floyd County Prosecutor's Office—including Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot and Jorge Diaz Guma—(the Prosecutor Defendants) concocted a scheme to target an out-of-state property located on Main Street in Louisville, Kentucky.

31. None of the named Floyd County Prosecutor Defendants are licensed to practice law in the Commonwealth of Kentucky, nor do they hold any legal authority, jurisdiction, or status within that sovereign state.

32. Rather than contacting Kentucky law enforcement or a licensed Kentucky prosecutor to initiate standard, lawful cross-border judicial processes, the Floyd County Prosecutors drafted custom documents purporting to "localize" or "domesticate" an Indiana criminal search warrant issued by Floyd County Indiana Superior Court Judge Carrie Stiller, which authorized the search of the property on Main Street in Louisville, Kentucky. These documents were prepared for presentation to a Kentucky court. No such legal mechanism or procedure exists under the laws of Indiana, Kentucky, or the United States.

33. By preparing these legally void, simulated instruments, the out-of-state prosecutors successfully misled a judge in Louisville, Kentucky into signing off on bogus "localization" documents for the Indiana search warrants.

34.  On or about the same period, Defendant Detective L. Martin Wimp of the Indiana State Police, and Detective Matthew Edgell of the New Albany Police Department acting in concert with Officers of the Louisville Metro Police Department (LMPD), utilized one of these void instruments to execute a forcible entry and raid on the Main Street property in Louisville.

35. During this cross-border raid, law enforcement officers seized a separate, substantial sum of United States currency located inside the Kentucky property.

36.  Following the seizure, the executing officers failed to file a statutory return of the warrant, an inventory of the seized property, or any proof of service with the Jefferson County, Kentucky Court Clerk. This omission left the Commonwealth of Kentucky with

no judicial record of what was taken, who took it, or under what authority the raid was conducted.

37. Instead, Defendant Detective Wimp and the Indiana State Police immediately, unilaterally, and without judicial transfer orders expropriated the physical cash out of the sovereign Commonwealth of Kentucky and transported it across state lines into the State of Indiana, with the assistance of New Albany Police Officer Matthew Edgell and Louisville Police.

### III.    The Courtroom Defiance, Secret End-Run, and Blown Civil Deadlines

38. In the pending Indiana criminal matter, State of Indiana v. Henry Bachmann, Plaintiff Henry Bachmann, through his defense counsel, Plaintiff Matthew Lemme, filed a formal Motion for Return of Property, challenging the legality of the cash seizures.

39. The Indiana criminal court issued an explicit, mandatory order directing the Floyd County Prosecutor's Office to provide a full, verified accounting of all currency seized during the execution of the warrants.

40. Realizing that compiling a legitimate accounting would expose their illegal cross-border raid, the lack of a Kentucky return, and the unlawful interstate transport of physical cash, Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot and Jorge Diaz Guma intentionally defied the court order.

41. In response to this defiance, Plaintiff Bachmann filed a Motion to Compel and a Motion for Rule to Show Cause for contempt against the prosecutors.

42. To escape personal civil liability and an impending finding of contempt, Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot and Jorge Diaz Guma rushed to file a

9

secret civil action in the Floyd County court to engineer an ex parte civil asset seizure proceeding.

43.   The prosecutors presented a secret, ex parte Affidavit for Seizure of Property to Judge Carrie Stiller. (There is a statutory procedure which would permit the issuance of temporary ex parte orders for seizure, pending forfeiture) On its face, this seizure order explicitly stated that it targeted funds seized during the execution of a search warrant in Louisville, Kentucky—thereby memorializing on the face of an Indiana court record that the property had been seized outside the state's territorial jurisdiction.

44.   Judge Stiller signed the ex parte civil seizure order, permitting the Indiana State Police to retain the cash.   The existence of the filings was deliberately withheld from Henry Bachmann and his counsel.

45.   By hiding the civil seizure order, the State effectively blocked the defense from raising the jurisdictional violation in the ongoing criminal return-of-property hearings, temporarily freezing the criminal court's oversight.

46.   However, the Floyd County Prosecutor's Office subsequently failed to file the formal, follow-up civil forfeiture action within the strict, mandatory statutory deadlines required under Indiana law. The Statute required the return of funds to Henry Bachmann.

**IV.     The Bait-and-Switch, Legal Double-Bind, and the Kentucky Lawsuit**

47.   Having completely blown the statutory deadlines to legally hold the currency under a civil asset forfeiture framework, the Floyd County Prosecutor's Office pivoted to a brand-new, post-facto legal theory. Defendants claimed the seized cash was now being

held as "evidence or fruits of a theft" under an entirely separate criminal retention statute, attempting to retroactively cure a fundamentally illegal seizure by changing the label of the investigation.

48.  When Plaintiff Henry Bachmann, through his attorney Plaintiff Matthew Lemme, uncovered this maneuver and filed a formal Motion to Suppress, Defendants Delmas Philpot and Jorge Diaz Guma proudly argued in open court that the defense was in the "wrong state" to challenge the search. The prosecutors explicitly acknowledged on the record that the seizure had taken place in Kentucky under a "domesticated" warrant, and asserted that if the Bachmann's had a problem with the raid, they were required to litigate it in a Kentucky court.

49.  Because Defendants had intentionally bypassed the Kentucky court clerk and failed to file a standard return of warrant or property inventory in the Commonwealth of Kentucky, there was no active case, no public record, and no judicial hook for Henry Bachmann to file a standard suppression motion in Kentucky.

50.  To break this intentional jurisdictional blind spot, Plaintiff Henry Bachmann, by counsel Plaintiff Matthew Lemme, was forced to execute the only remedy available: filing an independent civil lawsuit in the Circuit Court of Jefferson County, Kentucky, seeking declaratory and injunctive relief against the Louisville Metro Police Department and the Jefferson County Clerk to legally compel the production and release of any records regarding the cross-border raid.

**V.      The Formal Letter and the Fabricated Gang Charge Email**

11

51.   Following these events, Plaintiff Matthew Lemme authored a formal legal letter to the Floyd County Prosecutor's Office outlining the precise factual and procedural defects of the state's actions. The letter explicitly put Defendants on notice that:

- They had placed their own law enforcement officers in severe legal peril by creating simulated legal process.

- An Indiana search warrant executed against a property inside the sovereign borders of Kentucky is void on its face and cannot be legally domesticated or perfected.

- The prosecutors were operating with a disabling personal conflict of interest, as their ongoing prosecutorial actions were being dictated by a need to avoid personal civil liability and contempt, leaving the State of Indiana without disinterested representation.

52.   Rather than addressing the jurisdictional violation or complying with the pending criminal court directives, the Floyd County Prosecutor's Office escalated its tactics to a top-down policy of active, malicious retaliation.

53.   Seeking tactical leverage to force a settlement or complete compliance, Defendants orchestrated the sudden, bad-faith arrest of Courtney Bachmann—a non-party spouse with no criminal history—by securing a sealed arrest warrant from Judge Stiller.

54.   The warrant was obtained on the same date that the prosecutors were confronted with the fact that they missed all deadlines to file a forfeiture action under the statutory scheme they leveraged. The Prosecutors requested that the warrant issued for Courtney Bachmann be sealed, stating *"It is feared that if the Information/Affidavit is not sealed,*

12

*the Defendant will learn of its existence before he is brought within custody of the Court, and it may expose Law Enforcement Officers to unnecessary risk" Exhibit 1 warrant seal request*

55. Courtney Bachmann had been seated in the courtroom to observe the proceedings involving her husband that very day.

56. To justify this vindictive prosecution, Defendant Deputy Prosecutor Jorge Diaz Guma sought to level a severe criminal motorcycle-gang enhancement charge against Courtney Bachmann.

57. During the course of discovery, a direct email communication was uncovered between the investigating Indiana State Police detective and the Floyd County Prosecutor's Office. In the email, the ISP detective explicitly refused the prosecutors' request to append the criminal gang charge to Courtney Bachmann, stating in writing that his investigation demonstrated she was not a member of the motorcycle club. *Exhibit 2 email*

58. Despite this explicit written refusal and a complete lack of police corroboration, Defendant Deputy Prosecutor Jorge Diaz Guma manually overrode the law enforcement agency, added the gang charge himself, and personally swore under penalties for perjury that Courtney Bachmann was an active member of the criminal organization. Defendant Diaz Guma's sworn statement stands directly contradicted by the state's own investigative records, the police files, the detective's own written lists of known members, and sworn statements of police in affidavits and in court testimony. *Exhibit 3 both Information and Amended Information*

VI.    **Direct Retaliation and Felony Intimidation Threats Against Plaintiff Matthew Lemme**

59.    On or about the same period, in direct response to receiving Plaintiff Lemme's formal legal letter, and the filing of a lawsuit in Kentucky related to bogus search warrants, the Floyd County Prosecutor's Office—with the personal knowledge, authorization, and ratification of Elected Prosecutor Chris Lane and Chief Deputy Elizabeth Stigdon— engaged in an outrageous assault on the defense team.

*60.*    Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot and Jorge Diaz Guma filed a written motion in the criminal matter explicitly accusing Plaintiff Matthew Lemme of engaging in "harassing and threatening communications" against the state's attorneys by virtue of sending the formal legal letter. *Exhibit 4 letter*

61.    Under Indiana law, sending an unlawful, threatening communication to an elected or deputy prosecutor constitutes the crime of Intimidation as a Level 5 Felony.

62.    By publishing these false criminal accusations on a public court docket, the Floyd County Prosecutor's Office issued a direct, thinly veiled threat of felony prosecution against Plaintiff Henry Bachmann's defense attorney, Matthew Lemme, in an overt attempt to extort a softening of the defense, chill protected speech, and intimidate counsel into withdrawing from the case. The Prosecutors further suggested disqualification of Bachmann's counsel on this basis.

63.    To further insulate themselves from public exposure, the Prosecutor Defendants integrated a request into their motion seeking to strictly muzzle Plaintiff Lemme,

demanding custom media and speech restrictions far beyond the standard rules of professional conduct.

64. Realizing the extreme impropriety of their filing, the Floyd County Prosecutors subsequently abandoned the motion and refused to bring it to a hearing; however, they intentionally refused to withdraw it from the record, leaving a permanent, unadjudicated accusation of a Level 5 Felony hanging over Plaintiff Lemme's professional and personal reputation as continuous tactical leverage.

65. At all times relevant to the misconduct alleged herein, the Defendant Prosecuting Attorney and Defendant Chief Deputy Prosecuting Attorney, and their named Defendant Deputies were not engaged in traditional, advocacy-based prosecutorial functions. Instead, these individuals engaged in investigative, administrative, or investigatory actions outside the scope of protected prosecutorial advocacy, rendering it ambiguous whether these actions were executed under actual authority as state judicial officers or as administrative agents operating on behalf of and funded by Floyd County.

66. These actions were in direct and immediate retaliation for Plaintiff Lemme's legal advocacy on behalf of Plaintiff Henry Bachmann in Kentucky courts.

### INAPPLICABILITY OF ABSOLUTE PROSECUTORIAL AND JUDICIAL IMMUNITY

67. Plaintiffs proactively assert that the doctrines of absolute prosecutorial immunity and absolute judicial immunity are wholly inapplicable to the extrajudicial, extraterritorial, and investigative conduct of the Defendants detailed herein.

68. **The Defendants completely lacked territorial jurisdiction**: Absolute prosecutorial and judicial immunities are fundamentally anchored to the legitimate territorial

15

jurisdiction of the court in which the state actors are authorized to operate. Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma are not licensed to practice law in the Commonwealth of Kentucky and derive their official authority solely from the State of Indiana as officers of the Floyd County Prosecutor's Office. They possess zero legal status, law enforcement authority, or license to practice law within the sovereign borders of the Commonwealth of Kentucky.

69. When the Floyd County Prosecutors hurled the color of their legal authority across the Ohio River onto Louisville, Kentucky, to orchestrate an unauthorized raid on a Main Street property, they completely abandoned their roles as advocates for the State of Indiana. By creating simulated legal process—specifically a phony, facially void "localization" instrument designed to bypass standard due process warrant requirements in Kentucky—the prosecutors acted entirely outside any valid authority and completely stripped themselves of absolute prosecutorial immunity.

70. The actions of the defendants were separate from the criminal prosecution and were part of the strategy of civil forfeiture of funds for a purpose not connected to prosecution.

71. The groundless statements accusing Bachmann's attorney of a crime for formally informing the prosecutors of their serious legal missteps in Kentucky, and filing suit in Kentucky, were not related to any prosecutorial function, though the criminal case record was used as the medium.

72. **The Prosecutors were performing Purely Investigative Functions**: Under the controlling United States Supreme Court precedent in <u>Buckley v. Fitzsimmons</u>, 509 U.S.

16

259 (1993), a prosecutor is not entitled to absolute immunity when performing administrative or investigative functions typically reserved for police officers, such as searching for evidence or directing raids. The electronic communications between the Floyd County Prosecutor's Office and the Indiana State Police demonstrate that the prosecutors actively directed, supervised, and conducted the investigation. This investigative conduct was entirely decoupled from the preparation or advocacy of the underlying criminal charges, operating as a self-contained asset hunt.

73. **The "Complaining Witness" Exception for Fabricated Evidence**: Under Kalina v. Fletcher, 522 U.S. 118 (1997), when a prosecuting attorney steps out of the role of an advocate and personally executes a sworn affidavit or certifies factual allegations under penalty of perjury to secure an arrest warrant, they act as a complaining witness, not an attorney. For such acts, absolute immunity is completely unavailable. Defendant Deputy Prosecutor Jorge Diaz Guma acted strictly as a complaining witness when he manually appended a severe criminal motorcycle-gang enhancement to the charging documents of Plaintiff Courtney Bachmann despite having explicit, written police documentation to the contrary.

74. **The Prosecutors Operated Under a Disabling Personal Conflict of Interest**: Absolute prosecutorial immunity only protects a prosecutor when they are acting as a disinterested "minister of justice" on behalf of the public. The moment Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot and Jorge Diaz Guma chose to intentionally defy a valid criminal court order for an accounting to shield themselves from contempt and personal civil liability, they operated under a disabling conflict of interest that strips them of the protections of absolute immunity.

17

75.   A prosecutor is entitled to absolute immunity only when that prosecutor acts "as an advocate for the State" and engages in activity that is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976).

76.   **The Inapplicability of Absolute Judicial Immunity:** While judicial immunity is broad, it is completely stripped when a judge acts in the "clear absence of all jurisdiction" or participates in an extrajudicial conspiracy that exceeds the bounds of the judicial office.

## MUNICIPAL AND ENTITY LIABILITY (MONELL CLAIMS)

### I.    Policy, Custom, or Practice of Floyd County, Indiana

77.   At all times relevant, Defendant Floyd County, Indiana, maintained an unconstitutional, widespread custom or practice of permitting, funding, and ratifying conduct wherein the Floyd County Prosecutor's Office directly injected itself into, and took command of, active field investigations. This is a longstanding practice of Floyd County, Indiana.

78.   Rather than confining the Prosecutor's Office to its traditional constitutional role as an advocate reviewing completed police files, Floyd County established a widespread administrative custom that authorized its prosecuting attorneys to act as a primary, directing law enforcement agency. This custom explicitly included directing police tactics, executing asset hunts, and managing the physical seizure and transport of property completely beyond the territorial and jurisdictional limits of the State of Indiana, specifically within the Commonwealth of Kentucky.

79.   Floyd County, through its final policymakers—including Elected Prosecutor Chris Lane—and his Chief Deputy failed to implement necessary policies, training protocols,

18

or administrative restraints to prevent its prosecutors from executing extrajudicial cross-border raids and creating simulated legal process, serving as the moving force behind the severe constitutional deprivations.

## II.      Policy, Custom, or Practice of the Louisville Metro Government

80.   At all times relevant, Defendant Louisville Metro Government, through its final policymakers and the leadership of the Louisville Metro Police Department (LMPD), maintained an unconstitutional policy, custom, or practice of allowing its officers to actively participate in, facilitate, and execute physical property raids without verifying the facial validity, territorial jurisdiction, or legal authority of the underlying instruments being presented.

81.   Louisville Metro Government failed to train, supervise, or discipline LMPD officers, including Defendants Louisville Police Officers, on the mandatory protocols required to handle    warrants, explicitly failing to instruct officers that they cannot serve or otherwise rely upon a facially constitutionally defective search warrant.

82.   Furthermore, Louisville Metro Government maintained an unlawful custom of permitting police to execute invalid search warrants and warrants based upon unverified information. Acting withing this custom and policy, supervisory officers of the Louisville Metro Police Department authorized, approved or knowingly acquiesced to the unconstitutional conduct of its officers knowing it was going to occur.

83.   LMPD maintained a custom and policy of defying its own written policies related to search warrant execution. Many of the written policies were created in response to the exposure of the pervasive violative acts by LMPD related to search warrant execution.

19

## CAUSES OF ACTION

**COUNT I**

**42 U.S.C. § 1983 – Extraterritorial Fourth Amendment Violation**

(Plaintiff Henry Bachmann against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, Jorge Diaz Guma, L. Martin Wimp, Matthew Edgell, and Louisville Metro Police Officers)

84.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

85. The Fourth Amendment protects individuals against unreasonable searches and seizures of their persons, houses, papers, and effects.

86. Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, Jorge Diaz Guma, L. Martin Wimp, and Matthew Edgell, acting under color of law, crossed the territorial boundaries of the State of Indiana and entered the sovereign Commonwealth of Kentucky to obtain assistance and execute a forcible raid on Plaintiff Henry Bachmann's property based on a facially void, simulated "localization" instrument.

87. The subsequent unilateral, undocumented removal of physical currency out of the Commonwealth of Kentucky, without filing a statutory return or inventory with a Kentucky court clerk, constitutes a warrantless seizure ab initio.

88.  Defendant Louisville Metro Government, through its police department (LMPD), maintained an unconstitutional custom or practice of failing to properly supervise, train, or restrain its officers from participating in extrajudicial, illegal raids directly causing the constitutional injuries to Henry Bachmann.

89. The named Louisville Police Defendants converted property of Henry Bachmann pursuant to the Indiana Prosecutor's scheme and transferred it to Indiana Police in Kentucky for the purpose of removing it from the jurisdiction of the Kentucky Courts.

20

**COUNT II**

**42 U.S.C. § 1983 – Fourteenth Amendment Procedural Due Process Violation**

(Plaintiff Henry Bachmann against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma)

90.   Plaintiffs reallege and incorporate by reference all preceding paragraphs.

91.   The Due Process Clause of the Fourteenth Amendment guarantees citizens a meaningful opportunity to be heard when the state deprives them of property.

92.   Defendants intentionally engineered a "jurisdictional vacuum" to block Henry Bachmann from exercising his right to challenge the legality of the cash seizures by withholding the mandatory return of warrant in Kentucky, while simultaneously using a secret, ex parte civil seizure order in Indiana—which was deliberately concealed from the parties—to freeze the criminal return-of-property hearings.

93.   By intentionally creating a legal double-bind where the defense was systematically stripped of any plain, speedy, or adequate remedy at law, Defendants deprived Henry Bachmann of his property without due process of law.

94.   By extraterritorial fiat, the prosecutor defendants claimed authority of the state of their choice procedurally, while decreeing that any effort of Bachmann to assert his clearly established rights was always – in the other state.

**COUNT III**

**42 U.S.C. § 1983 – Fourteenth Amendment Retaliatory and Vindictive Prosecution for Conversion of Property**

(Plaintiff Courtney Bachmann against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma)

95.   Plaintiffs reallege and incorporate by reference all preceding paragraphs.

21

96. The Fourteenth Amendment prohibits the state from bringing criminal charges or executing arrests out of vindictiveness or as direct retaliation for a citizen asserting their lawful rights.

97. Plaintiff Courtney Bachmann was a non-party spouse with no criminal history targeted for arrest under a sealed warrant solely as tactical leverage to force Henry Bachmann into a settlement and drop his demands for an asset accounting and return.

98. This prosecution was brought with severe, bad-faith animus immediately after Defendants realized they had blown their civil forfeiture deadlines and were facing contempt charges.

99. While a tort of malicious prosecution has not yet ripened for claim, (Courtney's case is pending) the same facts provide evidentiary support to the malice of the Prosecutor Defendants in converting property from Henry and Courtney Bachmann as part of the failed illegal forfeiture scheme.

100. The fact of the arrest is itself was used independently of any criminal prosecution to maintain seizure of cash from Courtney's home and business.

101. The prosecution of Courtney Bachmann was withheld as part of a scheme related to the failed civil forfeiture.

**COUNT IV**

**Fourteenth Amendment Due Process Violation**

(Plaintiff Courtney Bachmann against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma)

102. The Prosecutor's legally unsupported actions of her charges and arrest of Courtney Bachmann were part of an effort by the Indiana Prosecutors to shield money seized and

converted in State of Indiana v. Henry Bachmann by claiming that she was an owner of property.

103. The Prosecutors bootstrapped their illegal seizure in the Henry Bachmann case by claiming that neither Henry or Courtney had any claim to property of the other without jointly appearing in cases in which they were not a party, without notice, and in 2 different states.

**COUNT V**

**42 U.S.C. § 1983 – Fourteenth Amendment Fabrication of Evidence**
(Plaintiff Courtney Bachmann against Defendant Jorge Diaz Guma)

104. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

105. A criminal defendant has a clearly established Fourteenth Amendment Due Process right to be free from criminal charges based on fabricated evidence.

106. Defendant Deputy Prosecutor Jorge Diaz Guma actively fabricated evidence when he manually appended a severe criminal motorcycle-gang enhancement to Courtney Bachmann's charging documents despite having explicit, actual written knowledge from the investigating Indiana State Police detective stating that there was zero evidence to support such a charge.

107. By overriding law enforcement and personally swearing under penalties of perjury to a known, fabricated falsehood to secure an unlawful arrest and prosecution, Defendant Diaz Guma acted as a complaining witness, causing direct and severe constitutional injury to Courtney Bachmann.

108. This was done in direct response and on the same date that the State was ordered to appear and show cause why it should not be held in contempt for failing to return money. *Exhibit 5 Rule to Show Cause*

## COUNT VI
### 42 U.S.C. § 1983 – Sixth Amendment Interference with Counsel

(Plaintiff Henry Bachmann and Courtney Bachmann against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma)

109.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

110. The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, free from state-sponsored intimidation and artificially manufactured conflicts of interest.

111.  Defendants launched a direct assault on Henry Bachmann's defense team by filing a public, baseless motion accusing his defense attorney, Matthew Lemme, of a Level 5 Felony, coupled with an overbroad request to gag the defense from speaking to the media, in a bad-faith attempt to terrify counsel, force his disqualification, and strip Henry Bachmann of his chosen Sixth Amendment advocate.

112.  The unlawful seizure and deprivation of property was intended to, and succeeded in limiting the availability of funds to retain counsel.

## COUNT VII
### 42 U.S.C. § 1983 – First Amendment Retaliation

(Plaintiff Matthew Lemme against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma)

113. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

114.  The First Amendment protects an attorney's right to engage in core political and legal speech, including the right to send formal, civil, legal correspondence to government officials outlining jurisdictional boundaries, legal exposure, and official misconduct.

115. Plaintiff Matthew Lemme engaged in constitutionally protected speech when he authored and delivered the formal legal letter to the Floyd County Prosecutor's Office.

116. In direct retaliation for this protected speech, Defendants utilized the color of law to file a public, fraudulent motion accusing Plaintiff Lemme of felony intimidation, executing an action designed to chill protected speech and disrupt professional duties. The Prosecutor Defendants intended an adverse consequence to Plaintiff Lemme in retaliation for the exercise of his clearly established Constitutional rights.

117. Having to endure a criminal investigation is an adverse consequence that would deter individuals from exercising their First Amendment rights. See Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 584 (6th Cir. 2012) (noting that a threatened governmental investigation would deter an ordinary person from engaging in protected conduct) (citing Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 375 (6th Cir. 2011) Howard v. Livingston Cty., No. 21-1689, 2023 U.S. App. LEXIS 1540, at *25 (6th Cir. Jan. 20, 2023)

**COUNT VIII**

**42 U.S.C. § 1983 – Substantive Due Process Violation**

(Plaintiff Matthew Lemme against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma)

118.  Plaintiffs reallege and incorporate by reference all preceding paragraphs.

25

119. Plaintiff Lemme is an attorney licensed to practice law in Kentucky. He filed a lawsuit in Kentucky, seeking injunctive and declaratory relief to obtain records, in Kentucky, which were created by or at the direction of the Indiana Prosecutor Defendants, and may have been "sealed" or excluded by the same means.

120.  In direct response to this action in Kentucky, which exposed the Prosecutor Defendants actions in Kentucky, the Prosecutor Defendants claimed that the reference to activities and litigation in Kentucky were "signaling an effort to broaden the dispute beyond this case." And for this, the state actors purportedly sought sanctions, including limitations on Lemme's ability to file motions or practice law in an Indiana court.

121.  It is part of this same effort in which The Prosecutor Defendants allege that "Counsel Lemme has sent several harassing and threatening communications to the Floyd County Prosecutor's Office."  Indiana Code 35-45-2-1 defines a threat communicated to a prosecutor or deputy prosecutor as a Level 5 Felony. Indiana Code 35-45-10-2 defines "harassment" as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress."

122. The Prosecutor Defendants explicitly stated an intent to request disqualification of Lemme as Bachmann's counsel if their demands that he relent in his advocacy are not met.

123.  The actions of the Prosecutor Defendants are intended to injure Lemme in a way which is unjustifiable by any government interest and is conscience shocking.

124. The malice and bad faith on the part of the Prosecutor Defendants is evident from the face of the documents and from the fact that the Motion was abandoned by the prosecutors, but they have refused to withdraw it.

125.  Plaintiff Lemme has a liberty interest in his profession in Kentucky and Indiana, as well as in his professional reputation.

126. Defendants acted with actual malice, utilizing their unique status as authorized prosecuting attorneys to print a permanent, unadjudicated felony accusation against Plaintiff Lemme to damage his professional standing.


**COUNT IX**

**CONVERSION**

(Plaintiff Henry Bachmann against Louisville Metro Police Officers, Detective L. Martin Wimp, Detective Matthew Edgell under Kentucky laws of tort)

127. The named Defendants exerted unauthorized control over the property of Henry Bachmann in Louisville, Kentucky by seizure of property pursuant to a facially invalid and void warrant.

128. The named defendants exerted unauthorized control over the property of Henry Bachmann by removing property, or causing its removal.  from Kentucky to Indiana without any lawful authority to do so.

**COUNT X**

**OUTRAGE under Kentucky Laws of Tort**

(Plaintiff Henry Bachmann against Louisville Metro Police Officers, Detective L. Martin Wimp, Detective Matthew Edgell and Indiana Prosecutor Defendants under Kentucky laws of tort)

129. Plaintiff incorporates all facts set forth in previous paragraphs.

130. The actions of the named defendants were reckless or intentional. The actions were intended to cause emotional distress to Plaintiff Bachmann, and did cause such distress.

**COUNT XI**
**CIVIL CONSPIRACY UNDER 42 USC 1983**
(All Plaintiffs against all Defendant's herein)

131. The named defendants agreed and participated in in the acts set forth in the paragraphs of this complaint to deprive the Plaintiffs of their constitutional rights for the primary purpose of illegally seizing property, secondarily to conceal these unlawful acts, and to retaliate against the Plaintiffs for asserting clearly established constitutional rights related to these violations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Henry Bachmann, Courtney Bachmann, and Matthew Lemme respectfully pray that this Court enter judgment in their favor and against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, Jorge Diaz Guma, Detective L. Martin Wimp, the Unknown Officers of the Louisville Metro Police Department, the Floyd County Prosecutor's Office, Floyd County, Indiana, and the Louisville Metro Government, granting the following relief:

**A. Declaratory Relief**

1. ENTER a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that the actions of Defendants in fabricating, executing, and attempting to "domesticate" or "localize" an Indiana search warrant against real property situated within the sovereign Commonwealth of Kentucky were completely extrajudicial, lacked all

territorial jurisdiction, and violated the Fourth and Fourteenth Amendments to the United States Constitution.

2. ENTER a declaratory judgment declaring that the unilateral, unrecorded transport of seized United States currency across state lines from Kentucky to Indiana, without the filing of a formal return of warrant or inventory with the Jefferson County Clerk, constituted an unlawful, warrantless seizure ab initio.

3. ENTER a declaratory judgment declaring that the public filing of a motion by the Floyd County Prosecutor's Office falsely accusing defense counsel Matthew Lemme of felony intimidation, and subsequently leaving said motion "abandoned but not withdrawn," constituted an unconstitutional retaliation designed to chill protected First Amendment speech and interfere with Henry Bachmann's Sixth Amendment right to counsel.

## B. Injunctive Relief

4. ISSUE a permanent injunction enjoining the Floyd County Prosecutor's Office, Chris Lane, Elizabeth Stigdon, Delmas Philpot, and Jorge Diaz Guma from continuing to maintain, leverage, or act upon the unadjudicated felony allegations filed against Plaintiff Matthew Lemme on any public docket.

5. ISSUE a permanent injunction ordering the immediate, unconditional return of all United States currency unlawfully seized from the Louisville, Kentucky property and extrajudicially transported into the State of Indiana.

6. ISSUE a permanent injunction enjoining Defendants from seeking or enforcing any unconstitutional, overbroad gag orders or media restrictions designed to suppress or

29

chill public speech regarding the extrajudicial cross-border misconduct detailed herein.

**C. Compensatory and Special Damages**

7. AWARD compensatory and special damages to Plaintiff Henry Bachmann in an amount to be determined at trial, for financial losses, severe economic deprivation, business disruption, and constitutional injuries resulting from the unlawful extraterritorial raid and deprivation of procedural due process.

8. AWARD compensatory damages to Plaintiff Courtney Bachmann in an amount to be determined at trial, for the extreme deprivation of her physical liberty, emotional trauma, and severe reputational ruin resulting from her vindictive prosecution and the bad-faith fabrication of criminal gang enhancement charges.

9. 9. AWARD compensatory damages to Plaintiff Matthew Lemme in an amount to be determined at trial, for the profound harm inflicted upon his professional standing, the severe disruption to his law practice, and the distinct injury to his personal reputation resulting from Defendants' extortionate abuse of process, and for willful and malicious violations of his clearly established due process rights.

**D. Punitive Damages**

10. AWARD punitive damages against Defendants Chris Lane, Elizabeth Stigdon, Delmas Philpot, Jorge Diaz Guma, and Detective L. Martin Wimp, in their individual capacities, in an amount to be determined at trial, for conduct that was malicious, egregious, vindictive, and executed in reckless and calloused disregard for the clearly established constitutional and statutory rights of the Plaintiffs. Award punitive

damages against Louisville Police Defendants for their unlawful and unrepentant violations of law related to the service of invalid search warrants.

## E. Attorneys' Fees and Costs

11. AWARD Plaintiffs their reasonable attorneys' fees, expert witness fees, and all litigation costs incurred in bringing this action pursuant to 42 U.S.C. § 1988, as well as any applicable state law provisions.

## F. General Relief

12. AWARD Plaintiffs pre-judgment and post-judgment interest on all sums awarded, from the date of the constitutional deprivations to the date of satisfaction.

13. GRANT Plaintiffs such other, further, and general relief as this Court deems just, equitable, and proper.

14. Under the finding of a Civil Conspiracy under 42 USC 1983 hold all named Defendants Jointly and Severally responsible for all damages to which Plaintiffs are entitled to receive.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all counts and issues so triable as a matter of right.

Respectfully submitted,

/s/ Matthew R. Lemme
Matthew R. Lemme, #89893
Plaintiff and Counsel for Plaintiffs
LEMME LAW OFFICES, LLC
201 W. Main Street
New Albany, IN 47150

(812)-512-1234
office@getlemme.com